John Carroll Young, J.
These claims were filed to recover damages allegedly sustained by the claimants for interference with the title and possession of the claimants’ premises, for placing a cloud upon their titles, for trespass, and for the cost of legal services in connection with the State’s attempted appropriation of permanent easements over the lands of the claimants pursuant to section 30 of the Highway Law. The easements *175 were negative in nature “for the restriction, removal or prohibition of any sign, billboard, notice, poster, advertising device or other display ” with the right of entry to remove and demolish any sign which might be placed on the properties in violation of such easements.
The map in the Bardowitz (now Bard) claim was filed in Sullivan County Clerk’s office on October 8, 1.958, and in the Terrace Hotel claim on May 16, 1959. The right of the State to appropriate the easements was not disputed by the claimants, who filed separate claims for damages on June 10, 1960 and June 13, 1960, respectively.
While these claims were pending, on July 7, 1961, the Court of Appeals determined in Schulman v. People (10 N Y 2d 249), that the State under the provisions of said section 30 of the Highway Law had no power to take the casements in question. It is significant to note that in the first instance the Sullivan County Court found in favor of Schulman, to the effect that the State under said section 30 had no right to appropriate a negative easement of the type in question. The Appellate Division, Third Department, in a 4 to 1 decision, reversed and held that it did have such right (11 A D 2d 273); and the Court of Appeals reversed the Appellate Division in a 4 to 3 decision, in effect reinstating the decision of the trial court. (10 N Y 2d 249.)
After the Schulman decision by the Court of Appeals, the State moved to dismiss both appropriation claims above referred to, since under the Schulman case, appropriations of the type in question could not be made under section 30 of the said Highway Law. These motions, by orders of this court dated September 18, 1961 and filed October 3, 1961, were granted without prejudice to filing new claims for damages.
The present claims were thereafter filed; in Terrace Hotel, a notice of intention on October 3,1961 and the claim on November 30, 1961; in Bardowitz (now Bard), a notice of intention on October 7,1961 and the claim on February 1,1962. By separate motions dated February 21, 1963, the State moved to dismiss both claims. In granting the motions, the court found that the claims stated valid causes of action, except for the claims for attorneys’ services, but held that despite the fact that the dismissals of the original claims were “ without prejudice ”, they were barred because more than two years had expired from the dates of filing of the appropriation maps. (40 Mise 2d 978.)
On appeal, the Appellate Division, Third Department, reversed the order of dismissal and held that the present claims were in the nature of a tort action and were timely filed. The matter was remanded to the Court of Claims for further action *176 not inconsistent with said decision and for a “more extensive development ” as to whether “there is any culpability on the part of the State which can be shown to be the proximate cause of the loss of the expenditure for legal services here sought (19 AD 2d 434.)
These claims were tried separately, but because of the similarity of the facts and the law applicable thereto, this one decision is rendered covering both claims.
The testimony of the claimants showed that prior to the attempted appropriation of the easements by the State, they had some negotiations with possible lessees for the rental of their lands for sign and billboard purposes, but no contracts were made. After the maps were filed, all negotiations ceased. Further proof was offered to show the fair and reasonable rental value of claimants’ lands for sign purposes.
Claimants’ positions were that such negotiations terminated when they were advised by their legal counsel that such use of their lands was prohibited under said attempted easement; however, there were no signs or billboards erected on the premises of either of the claimants at any time prior to the filing of the maps by the State, and, although a period of about three years and three months elapsed between the date of the Schulmcm decision by the Court of Appeals and the trial of these claims, there was no proof that any signs or billboards have since been placed or erected on either of the claimants’ properties, or contracts entered into therefor. Even had the court not reached the ultimate decision herein as hereinafter mentioned, any award for damages allegedly sustained by the claimants founded on such evidence would, therefore, be unwarranted as based on speculation.
The claimants allege that they have also been damaged because the State placed clouds upon their titles, but they produced no evidence to sustain this part of their claims; accordingly, no award, other than a nominal amount, could be made for such alleged damages.
After the purported appropriations were made, it was proper and necessary, on the assumption that appropriations had been made for which claimants were entitled to be compensated by the State, that the claimants prepare and file their claims for damages, and for such purpose, it was advisable that they retain legal counsel since the State would be represented by the Attorney-General as an adversary in the expected litigation, and it would be necessary to observe various legal technicalities as required by law in the presentation and prosecution of such claims.
*177 Both of the claimants herein did so, and the same attorneys — the present attorneys for the claimants herein — were retained to represent both claimants. Separate claims were prepared and filed and the attorney for the claimants testified as to the legal services rendered in each claim. He testified that the fair and reasonable value of the attorneys’ services rendered was $1,000 in each case. The State offered no proof to contradict the fact that such services were rendered or their value, and, if liability existed for which the State had waived immunity and was liable, the amount of damages based upon the reasonable value of the attorneys’ services in each case would stand undisputed.
However, had the attempted appropriation been valid, no costs or allowance could be made for the performance of such services; a specific provision contained in section 27 of the Court of Claims Act provides as follows: “ § 27. Taxation of costs, fees and disbursements. Costs, witnesses’ fees and disbursements shall not be taxed, nor shall counsel or attorneys’ fees be allowed by the court to any party.”
The law is well settled that in the conduction of general litigation, attorneys’ fees for services are not recoverable as damages. (Avalon Constr. Corp. v. Kirch Holding Co., 256 N. Y. 137.)
In any event, in view of the ultimate decision reached by this court as hereinafter set forth, it is deemed unnecessary in these present cases to pass upon the question of whether any amount that may be owed by claimants or either of them to their attorneys for services rendered in preparing and filing claims based upon the void purported appropriation of such negative easements, constitutes an item of damage properly to be considered in these cases.
Tn Schulman v. People (10 N Y 2d 249, 255) the Court of Appeals in determining the power and authority of the Superintendent of Public Works to appropriate negative easements prohibiting advertising signs along a portion of Boute 17, stated: “ In any event section 30 of the Highway Law appears not to have been designed or intended to authorize the condemnation of easements of this character ”.
The purported act of the Superintendent was void and a nullity from its inception. Voluntary compliance with these void directives by the present claimants created no cause of action against the State. The claimants were presumed to know the law.
The action of the Superintendent of Public Works in these cases was not based on inadequate study, nor did it lack reasonable basis; his act was not an act of negligence; it was an error; *178 m judgment as to the extent of his authority under the existing law, and cannot be held to have been malicious.
On the question as to whether the State, as a sovereign, has waived its immunity in cases such as presented here, it is essential to consider the applicable provisions of section 8 of the Court of Claims Act, which are as follows: “ § 8. Waiver of immunity from liability. The state hereby waives its immunity from liability and action and hereby assumes liability and consents to have the same determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations, provided the claimant complies with the limitations of this article.”
This provision has been construed to mean that the State has waived its immunity ‘ ‘ from liability and action ’ ’, but only where an individual or corporation would be required to answer to an action for the same thing. (Newiadony v. State of New York, 276 App. Div. 59, 60.)
The right of eminent domain, to appropriate land, or rights therein, is an attribute of sovereignty which requires no constitutional recognition. (Kahlen v. State of New York, 223 N. Y. 383.) It cannot be surrendered (People v. Adirondack Ry. Co., 160 N. Y. 225, 236), and it is for the Legislature to determine the manner of its exercise. (Society of N. Y. Hosp. v. Johnson, 5 N Y 2d 102.) Certain authority has been delegated by the Legislature to the Superintendent of Public Works under section 30 of the Highway Law to exercise such right of eminent domain on behalf of the State.
The act of the Superintendent in question in these cases, was an attempted appropriation under a misconstruction by said Superintendent of his authority under said section and whose act was determined by the Court of Appeals to be void and a nullity. Since such an act could be performed only by a sovereign, it does not come within the provisions of section 8 of the Court of Claims Act as construed in Newiadony (supra), and the State has not waived its immunity in this instance. The State, therefore, cannot be held liable for damages resulting from these acts of the Superintendent of Public Works.
In Newiadony (supra, p. 61), the court said: “ It is commonly regarded that no liability arises from the public acts of the executive and judicial officers of the State exercised within the frame of their constitutional and legal powers. And when a general waiver of immunity and assumption of liability are related to cases where liability may be incurred in private activities, they could not attach themselves to the kind of function which has no private warrant or existence.”
*179 The same interpretation of section 8 of the Court of Claims Act was given in Granger v. State of New York (14 A D 2d 645, 646), wherein the court held: “ The waiver of immunity by section 8 of the Court of Claims Act which subjects the State to the same liability as individuals or corporations for like acts is of no avail to claimant. The kind of governmental administration provided by this statute is sovereign in character and is completely foreign to any activity which is, or could be, carried on by a private person. ’ ’
It has also been held that the State cannot be held liable for an error in judgment of its duly appointed and acting executive officer acting within the scope of his duties; that the public officer in discharging such duties acts in a “ quasi judicial ” capacity. (Weiss v. Note, 7 N Y 2d 579.)
It is, therefore, the determination of this court that these claims must be dismissed.